FILED
2015 Mar-26  AM 09:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **KAREN D.  LUEPNITZ.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | |
| ) | **Civil Action No.** |
| **CAROLYN W.  COLVIN** ) | **6:13-CV-01185-MHH** |
| **Acting Commissioner of the** ) | |
| **Social Security Administration,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

Pursuant to Title II of Section 205(g) and Title XVI of Section 1631(c)(3) of the Social Security Act, plaintiff Karen D. Luepnitz seeks judicial review of a final adverse decision of the Commissioner of Social Security, who affirmed the Administrative Law Judge's denial of Ms. Luepnitz's claim for a period of disability, disability insurance benefits, and supplemental security income benefits. *See* 42 U.S.C. §§ 405(g), 1383(c).  After careful review, the Court affirms the decision of the Commissioner of Social Security.

## I.     STANDARD OF REVIEW

The scope of review in this matter is limited.  "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "review[s] the ALJ's 'factual findings with deference' and her 'legal conclusions with close

scrutiny.'" *Riggs v. Comm'r of Soc. Sec.*, 522 Fed. Appx. 509, 510–11 (11th Cir. 2013) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the record to support the ALJ's findings. "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In making this evaluation, the Court may not "reweigh the evidence or decide the facts anew," and the Court must "defer to the ALJ's decision if it is supported by substantial evidence even if the evidence may preponderate against it." *Gaskin v. Comm'r of Soc. Sec.*, 533 Fed. Appx. 929, 930 (11th Cir. 2013).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards. If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis, then the Court must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

## II.    FACTUAL & PROCEDURAL BACKGROUND

On March 9, 2011, Ms. Luepnitz applied for disability insurance benefits and supplemental security income pursuant to Title II and Title XVI of the Social

Security Act.[1]   (Doc. 5-6, pp. 9–17); U.S.C. §§ 405(g), 1383(c).   The Social Security Administration denied Ms. Luepnitz's application on April 29, 2011. (Doc. 5-5, p. 2).   On May 15, 2012, at the request of Ms. Luepnitz, an ALJ conducted a hearing concerning her application.   (Doc. 5-3, p. 25).   Ms. Luepnitz and an impartial vocational expert, Dr. Jewel Euto, testified at the hearing.   (Doc. 5-3, p. 26).   At the time of the hearing, Ms. Luepnitz was forty-six years old and had completed high school.[2]   (Doc. 5-3, p. 34).   Ms. Luepnitz had worked in the past as a postal clerk for at least sixteen years.   (Doc. 5-3, pp. 36, 66).

On June 4, 2012, the ALJ denied Ms. Luepnitz's request for disability benefits, concluding that Ms. Luepnitz's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms, but that the intensity, persistence, and limiting effects of the impairments did not render her disabled.   (Doc. 5-3, p. 21).   The ALJ found that Ms. Luepnitz's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms [were] not credible to the extent they [were] inconsistent with the objective medical evidence of record."   (Doc. 5-3, p. 16).

---

[1] The ALJ's decision and Ms. Luepnitz's brief state that Ms. Luepnitz applied for social security benefits on March 9, 2011.   (Doc. 5-3, p. 10; Doc 8).   The Disability Determination and Transmittal also lists a filing date of March 9, 2011.   (Doc. 5-4, p. 10).   However, the Application Summary for Disability Insurance Benefits and Application Summary for Supplemental Security Income Benefits are dated March 10, 2011.   (Doc. 5-6, p. 9).   The discrepancy has no impact on the Court's analysis.

[2] Ms. Luepnitz was forty-four years old on the onset date of alleged disability.

In the decision, the ALJ described the "five-step sequential evaluation process for determining whether an individual is disabled." (Doc. 5-3, p. 11). At step one, the ALJ found that Ms. Luepnitz had not engaged in substantial gainful activity since June 1, 2010, the alleged onset date. (Doc. 5-3, p. 12). At step two, the ALJ found that Ms. Luepnitz had the following severe impairments: "degenerative joint disease of the left knee status post left total knee replacement (February 2011), degenerative disc disease of the lumbar spine, lumbar spondylolisthesis, and a history of fibromyalgia." (Doc. 5-3, p. 12).

In addition to her physical impairments, Ms. Luepnitz suffers from depression. The ALJ determined that Ms. Luepnitz's depressive disorder was "non-severe" because her symptoms caused only "minimal limitation in [her] ability to perform basic mental work activities." (Doc. 5-3, p. 12). In evaluating the extent of Ms. Luepnitz's depressive disorder, the ALJ reviewed records from Dr. Alan Blotcky, a psychologist who examined Ms. Luepnitz at her attorney's request. (Doc. 5-3, pp. 12–13). The ALJ found that Dr. Blotcky's conclusions were inconsistent with other evidence in the record, and the ALJ assigned his opinion "little weight." (Doc. 5-3, p. 13). Additionally, the ALJ recognized that Ms. Lueptniz did not seek treatment following Dr. Blotcky's evaluation despite Dr. Blotcky's recommendation that Ms. Luepnitz seek "psychiatric treatment on a regular and uninterrupted basis." (Doc. 5-3, p. 13; Doc. 5-9, p. 31). The ALJ

noted that "[Ms. Luepnitz] has not seen a psychiatrist nor any other mental health professional at any time relevant to the decision." (Doc. 5-3, p. 13). Instead, Dr. Mangieri, Ms. Luepnitz's pain management doctor, was prescribing Prozac for Ms. Luepnitz. The ALJ did not consider Dr. Blotcky a "treating source" because the doctor examined Ms. Luepnitz only once. (Doc. 5-3, p. 13).

As part of her analysis of the severity of Ms. Luepnitz's depression, the ALJ considered section 12.00C of the Listing of Impairments, the disability regulations governing mental disorders. 20 C.F.R. § 404(p)(1); (Doc. 5-3, p. 14). Paragraph B of Listing 12.00C identifies four functional areas for evaluating depression: (1) daily living, (2) social functioning, (3) concentration, persistence, or pace, and (4) episodes of decompensation. (Doc. 5-3, p. 14). The ALJ evaluated all four areas. First, she determined that Ms. Luepnitz has no limitation in daily living because on a typical day, Ms. Luepnitz gets her son ready for school, cleans up the kitchen after breakfast, completes household chores, takes her medication, lies down to elevate her feet due to swelling, prepares dinner, walks for fifteen minutes, visits with family, and gets ready for bed. (Doc. 5-3, p. 13). Second, the ALJ concluded that Ms. Luepnitz experienced no limitation of her social functioning because she "spends time with family and friends and goes places with them," attends monthly

doctors' appointments, and lives with her spouse and children.[3]  (Doc. 5-3, p. 14).

Third, the ALJ determined that Ms. Luepnitz has mild limitation in her

concentration, persistence, and pace.  (Doc. 5-3, p. 14).  The ALJ noted that Ms.

Luepnitz is able to read, scrapbook, use the computer, and watch television.  (*Id.*).

Ms. Luepnitz also "initially denied problems with maintaining her concentration,

or the abilities to tolerate stress or [follow] instructions."  (Doc. 5-3, p. 14).

Fourth, the ALJ found that Ms. Luepnitz did not suffer from episodes of

decompensation.  (Doc. 5-3, p. 14).  Because Ms. Luepnitz had not met the criteria

in paragraph B of Listing 12.00C, the ALJ concluded that Ms. Luepnitz's mental

impairments are non-severe.  (Doc. 5-3, p. 14).

At step three of the evaluation process, the ALJ must consider whether the

claimant is able to work despite her impairments.  The analysis has two steps.

First, the ALJ must determine whether a medically determinable impairment could

reasonably be expected to produce the claimant's symptoms.  (Doc. 5-3, p. 15).

Then, if an underlying impairment has been established, the ALJ must evaluate the

intensity, persistence, and limiting effects of the symptoms to determine the extent

of the limitations.  (Doc. 5-3, p. 15).  If statements about the intensity, persistence,

or functionally limiting effects of pain are not substantiated by objective medical

---

[3] The ALJ cites Exhibit 11F, Dr. Blotcky's evaluation in support of the conclusion that Ms.
Luepnitz does not experience limitations in her social functioning.  The evaluation states "[Ms.
Luepnitz] sees her parents on a regular basis," but the evaluation also states that Ms. Luepnitz
has no close friends.  (Doc. 5-9, p. 29).

evidence, then the ALJ must make a credibility determination based on the entire record. (Doc. 5-3, p. 15).

In the first part of step three's bifurcated analysis, the ALJ determined that Ms. Luepnitz does not have an impairment or combination of impairments that meet or are medically equal to the severity of a listed impairment. (Doc. 5-3, p. 15). In the second part of analysis, the ALJ found that Ms. Luepnitz has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), and that she can frequently lift and/or carry up to ten pounds with a ten pound maximum lifting capacity. (Doc. 5-3, p. 15).

The ALJ concluded that Ms. Luepnitz can stand and/or walk with normal breaks for at least two hours during an eight-hour workday and sit with normal breaks for up to eight hours during an eight-hour workday. (Doc. 5-3, p. 15). The ALJ stated that Ms. Luepnitz should not perform push or pull movements, operate foot controls, or climb ladders, ropes, or scaffolds. (Doc. 5-3, p. 15). The ALJ found that Ms. Luepnitz can occasionally climb ramps and stairs, but she should avoid working at unprotected heights or at close proximity to dangerous machinery. (Doc. 5-3, p. 15). The ALJ specified that Ms. Luepnitz should avoid operating motorized vehicles and equipment. (Doc. 5-3, p. 15). In reaching her conclusion, the ALJ considered all of Ms. Luepnitz's symptoms to the extent that

they could "reasonably be accepted as consistent with objective medical evidence and other evidence." (Doc. 5-3, p. 15).

After reviewing the evidence, the ALJ determined that Ms. Luepnitz's impairments could reasonably be expected to cause some of the alleged symptoms; however, the ALJ did not find her statements concerning the intensity, persistence, and limiting effects to be credible to the extent that they were inconsistent with the record. (Doc. 5-3, p. 16). The ALJ based her decision in part on the fact that Ms. Luepnitz had been on methadone for pain management for seven years, long before her knee surgery (which improved the condition of her knee), and had worked for the vast majority of those years. (Doc. 5-3, p. 19). Similarly, Ms. Luepnitz's medical records demonstrate that she was diagnosed with severe depression years before she stopped working, suggesting that her depression did not render her unable to work. (Doc. 5-8, p. 24).

The ALJ fully considered Ms. Luepnitz's hearing testimony. The ALJ accurately recounted that Ms. Luepnitz is 5'7" tall, and she gained weight due to her knee condition and inactivity. (Doc. 5-3, p. 15). The ALJ noted that Ms. Luepnitz estimated that she could sit for thirty minutes to an hour, stand for thirty minutes, and walk for thirty minutes. (Doc. 5-3, p. 44). Ms. Luepnitz also testified that she reclined between three and five hours each day; she could not bend over to pick up her grandchild who weighed approximately twenty-one pounds; and after

surgery, she was advised that she should never kneel.  (Doc. 5-3, pp. 45, 60–62).

Additionally, Ms. Luepnitz reported that she walks with a cane.  (Doc. 5-3, p. 17;

Doc. 5-4, p. 4).  The ALJ noted that Ms. Luepnitz reported that she could take care

of her personal needs and could cook and clean on some days.  (Doc. 5-3, p. 16).

The ALJ also described Ms. Luepnitz's "typical day" in which she is able to

perform household chores, get her son ready for school, and visit with family.

(Doc. 5-3, p. 16).

The ALJ reviewed reports from Dr. Davis at the Andrews Sports Medicine

and Orthopedic Center. Those records describe Ms. Luepnitz's knee impairments.

(Doc. 5-3, p. 17; Doc. 5-8, p. 68).  The ALJ also reviewed a report from Dr. Syed

Bilal Ahmed Bhat, a physician who examined Ms. Luepnitz's range of motion in

her left knee.  (Doc. 5-3, p. 17; Doc. 5-8, p. 101).  Dr. Bhat reported "muscle

strength 5/5 in all groups, . . . no cyanosis, clubbing, or edema, . . . [and her] gait

[was] normal."  (Doc. 5-8, p. 105).  The ALJ considered post-surgery notes which

state that Ms. Luepnitz recovered with minimal swelling and pain, and her x-rays

showed good position of the hardware after an arthroplasty.  (Doc. 5-3, pp. 16–17).

Consistent with those notes, Ms. Luepnitz testified that her knee was better

following the replacement surgery.[4]  (Doc. 5-3, p. 42).  Although she found that

---

[4] Ms. Luepnitz testified that her knee was "better than it was before the surgery . . . but I still just have a lot of pain, a lot of swelling. . . . it is better and it is.  But I have swelling where I have to keep it up above my heart, I have to raise my leg and stuff."  (Doc. 5-3, p. 42).

Ms. Luepnitz's knee impairment had improved, the ALJ concluded that this impairment created functional limitations on Ms. Luepnitz's ability to stand, walk, or engage in other postural activities.  (Doc. 5-3, p. 17).

To evaluate the impact of Ms. Luepnitz's degenerative disc disease of the lumbar spine and lumbar spondylolisthesis on her ability to work, the ALJ reviewed an MRI taken by the Radiology Clinic on May 17, 2010.  (Doc. 5-3, p. 17; Doc. 5-8, p. 3).  The ALJ observed:

> [Ms. Luepnitz's] lumbar spine .  .  .  shows moderate central canal spinal stenosis at L4-5 with mild 4mm, anterior subluxation of L4 on L5, severe degenerative joint disease with hypertrophy present in the facet joints, small right-sided posterior disc bulge/protrusion at L5-S1 without definite nerve root impingement, and moderate stenosis of neural formina bilaterally at L5-S1 without definite nerve root impingement.

(Doc. 5-3, p. 17; Doc. 5-8, p. 3).  The ALJ also noted that Ms. Luepnitz had a "pretty good response" to conservative treatment for her spinal impairment.  (Doc. 5-3, p. 17; Doc. 5-8, p. 7).  However, the ALJ determined that Ms. Luepnitz should not lift or carry heavy objects (Doc. 5-3, p. 17).

With regard to Ms. Luepnitz's fibromyalgia, the ALJ found that the evidence did not substantiate claims that Ms. Luepnitz experiences limitations other than those caused by her knee and spinal impairments.  (Doc. 5-3, p. 17).  The ALJ reasoned that "none of [Ms. Luepnitz's] attending physicians have indicated [she] has any significant functional limitations due to this condition, and [she] has .  .  .

worked for years with this impairment at the light level of exertion. (Doc. 5-3, p. 17). The ALJ noted that Dr. Mangieri treated Ms. Luepnitz for fibromyalgia, and Dr. Randell Ayvers, a rheumatologist, confirmed this diagnosis.[5] (Doc. 5-3, p. 17; Doc. 5-8, p. 94; Doc. 5-9, p. 54). However, in reviewing Ms. Luepnitz's testimony and reported activities of daily living, the ALJ did not find limitations linked to fibromyalgia. (Doc. 5-3, pp. 17–18).

Furthermore, the ALJ concluded that Ms. Luepnitz's hypertension did not pose any significant limitations on her ability to work. (Doc. 5-3, p. 18). Citing a report from Dr. Jason Hatfield, a physician who examined Ms. Luepnitz on August 7, 2009, the ALJ noted that Ms. Luepnitz's hypertension was stable on medication. (Doc. 5-3, p. 17; Doc. 5-8, p. 13).

The ALJ evaluated the impact of Ms. Luepnitz's weight gain on her back and knee impairments. The ALJ reviewed Social Security Ruling 02-1p ("SSR 02-1p"). SSR 02-1p, which gives guidance on the impact of obesity, states that "someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone." (Doc. 5-3, p. 18). The ALJ also recognized that medical professionals have described the claimant as "moderately overweight." (Doc. 5-3, p. 18). The ALJ found that Ms.

---

[5] On May 4, 2012, the claimant's counsel deposed Dr. Eugene Mangieri. (Doc. 5-9, p. 50). Dr. Mangieri testified that Ms. Luepnitz consulted a rheumatologist who confirmed a diagnosis of fibromyalgia. (Doc. 5-9, p. 54).

Luepnitz's weight would adversely impact her left knee impairments, her spinal conditions, and her fibromyalgia.  (Doc. 5-3, p. 18; Doc. 5-8, p. 49).  However, because Ms. Luepnitz "is a younger individual and . . .  reported a broad range[] of activities and abilities[,]" the ALJ determined that Ms. Luepnitz's impairments do not limit her ability to engage in the physical activity that a sedentary work environment requires.  (Doc. 5-3, p. 18).

The ALJ concluded that although Ms. Luepnitz described high levels of pain, "the objective medical evidence . . . when reviewed in [its] entirety, clearly indicates the claimant has experienced good pain control with few, if any, side effects from her medication regimen."  (Doc. 5-3, p. 19; Doc. 5-9, pp. 3, 10).  The ALJ concluded that though Ms. Lueupnitz is limited, she can still perform sedentary work.  (Doc. 5-3, pp. 15–20).

At step four of the evaluation, the ALJ determined that Ms. Luepnitz is unable to perform any past relevant work.  (Doc. 5-3, p. 19).  Dr. Euto, the vocational expert, testified at the hearing that Ms. Luepnitz cannot perform her past relevant work, but she possesses transferable skills.  (Doc. 5-3, pp. 19, 66–69).

At the final step of the evaluation, the ALJ determined that Ms. Luepnitz can perform a number of available jobs in the national economy.  (Doc. 5-3, p. 20).  Dr. Euto testified at the hearing that an individual with Ms. Luepnitz's age, work experience, and RFC would be able to "perform the requirements of representative

occupations such as claims clerk, . . . information clerk, . . . and dispatcher," all occupations having jobs existing in significant numbers in the economy according to Dr. Euto.[6] (Doc. 5-3, p. 21). Based on Dr. Euto's testimony, the ALJ concluded that Ms. Luepnitz is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Doc. 5-3, p. 21). Accordingly, the ALJ concluded that Ms. Luepnitz is not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act.

On June 26, 2012, Ms. Luepnitz requested review from the Appeals Council, and on April 22, 2013, the Appeals Council denied her request for review. (Doc. 5-3, p. 2). Thus, the ALJ's decision rendered on June 4, 2012, became the final decision of the Commissioner. (Doc. 5-3, p. 2). Having exhausted all administrative remedies, Ms. Luepnitz filed this action for judicial review pursuant to §205(g) and §1631(c)(3) of the Social Security Act. 42 U.S.C. §405(g) and §1383(c)(3).

## III.   ANALYSIS

To be eligible for disability insurance benefits, a claimant must be disabled. *Gaskin*, 533 Fed. Appx. at 930. "A claimant is disabled if he is unable to engage in substantial gainful activity by reason of a medically-determinable impairment that

---

[6] On June 4, 2012, the vocational expert testified there are approximately 29,5000 claims clerks positions in the state, approximately 16,230 information clerk positions in the state, and approximately 190,700 dispatcher positions in the state (Doc. 5-3, pp. 21, 68).

can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)). A claimant must prove that he is disabled. *Id.* (citing *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003)). To determine whether a claimant is disabled, the ALJ applies a sequential, five-step evaluation:

> This process includes a determination of whether the claimant (1) is unable to engage in substantial gainful activity; (2) has a severe and medically-determinable physical or mental impairment; (3) has such an impairment that meets or equals a Listing and meets the duration requirements; (4) can perform his past relevant work, in the light of his residual functional capacity; and (5) can make an adjustment to other work, in the light of his residual functional capacity, age, education, and work experience.

*Gaskin*, 533 Fed. Appx. at 930 (citation omitted).

Ms. Luepnitz argues that the ALJ's decision is wrong for two reasons. First, Ms. Luepnitz contends that the ALJ did not give sufficient weight to the opinion of treating physician, Dr. Eugene Mangieri, at step three of the evaluation process. (Doc. 8, p. 9). Ms. Luepnitz argues that the ALJ disregarded various pain reports in the record that reflected more severe pain and "cherry-picked" reports to support the decision to deny the application. (Doc. 8, p. 10–11). In short, Ms. Luepnitz contends that the ALJ has not sufficiently established good cause for placing little weight on Dr. Mangieri's medical opinion, and she asks this Court to reverse the ALJ's decision. (Doc. 8, p. 17). Second, Ms. Luepnitz contends that the ALJ erred in conducting step three of the evaluation process by improperly assessing

the combined effect of Ms. Luepnitz's impairments.   (Doc. 8, p. 11–12). Specifically, Ms. Luepnitz argues that the ALJ failed to apply the subjective pain standard.  (Doc. 8, p. 12).  The Court considers these arguments in turn.

### A.  Weight Accorded to Ms. Luepnitz's Treating Physician

The ALJ did not err when she assigned little weight to Ms. Luepnitz's pain management physician's opinion.  "The opinion of a treating physician 'must be given substantial or considerable weight unless good cause is shown to the contrary.'"  *Davis v. Astrue*, 287 Fed. Appx. 748, 753 (11th Cir. 2008) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240) (11th Cir. 2004)).  Good cause exists when evidence in the record fails to bolster a doctor's opinion, supports a contrary finding, or when the doctor's opinions are inconsistent with the doctor's own medical records.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  An ALJ establishes good cause by: (1) clearly articulating adequate reasons for assigning less weight and (2) specifically identifying substantial evidence in the record that supports the finding.  *See Mills v. Astrue*, 226 Fed. Appx. 926, 931 (11th Cir. 2007); *Miller v. Barnhart*, 182 Fed. Appx. 959, 964 (11th Cir. 2006); *Beck v. Astrue*, 663 F. Supp. 2d 1212, 1217–18 (N.D. Ala. 2009).

In *Phillips*, the Eleventh Circuit concluded that substantial evidence supported the ALJ's decision to assign a treating doctor's opinion little weight.[7] *Phillips*, 357 F.3d at 1240.  The court explained that the ALJ clearly articulated reasons for finding inconsistencies between the treating physician's records and the claimant's testimony.  *Id.* at 1241.  Specifically, the ALJ cited notes, dates, and the claimant's reports.  *Id.* at 1241 (explaining that a doctor's notes detailing a claimant's "less severe" pain were inconsistent with a "very restrictive" assessment that the claimant could work three hours in an eight hour day and sit intermittently for up to 30 minutes, but had to lie down three to four times a day for 30 minutes to an hour at a time).

Like the Eleventh Circuit in *Phillips*, the district court in *Beck* held that an ALJ must provide substantial evidence when discrediting a treating doctor's opinion.  *Beck*, 663 F. Supp. 2d at 1217.  The district court in *Beck* reversed and remanded the ALJ's decision, finding that the ALJ did not provide support to discredit the treating doctor's opinion.  *Id.* at 1217.  Specifically, the court noted that "[t]he ALJ does not explain in what way [the doctor's] treatment . . . is inconsistent with his opinion. . . . Nor does the ALJ . . . explain why he believes

---

[7] The Eleventh Circuit remanded *Philips* on grounds that the ALJ improperly relied on the Medical Vocational Guidelines when making a determination at step five of the sequential evaluation process.  *Phillips*, 357 F.3d at 1242.  That issue is not before the Court.

[the doctor's] opinion is inconsistent with the symptoms and limitations the claimant reported. . . ." *Id.* at 1217.

Quoting *Ellington v. Astrue*, No. 2:07cv789-CSC, 2008 WL 1805435 (M.D. Ala. Apr. 18, 2008), Ms. Luepnitz argues that the ALJ "cull[ed] 'the record for selective references, ignoring comments that did not support the conclusions.'" (Doc. 8, p. 11). The ALJ in *Ellington* affirmed the Commissioner's decision denying benefits to a minor diagnosed with attention deficit disorder, psychosis, and explosive disorder. *Ellington*, 2008 WL 1805435, at *11. The district court in *Ellington* reversed, finding that the ALJ improperly weighed evidence from the treating physicians by ignoring "salient portions of [their] records." *Id.* (explaining that the ALJ's sole reliance on the claimant's first grade teacher is "particularly egregious" because that evidence is in direct conflict with the medical evidence in the record).

This case is not *Ellington*. Here, the ALJ "gave serious consideration to the stated opinions of Dr. Mangieri," Ms. Luepnitz's pain management doctor, and concluded that other objective evidence in the record outweighs the treating doctor's opinion. (Doc. 5-3, p. 19). The ALJ did not improperly "cull the record" to support her claim. The ALJ simply gave greater weight to the evaluations from physicians who treated Ms. Luepnitz for her impairments than she did to Dr. Mangieri, who was tasked with managing Ms. Luepnitz's pain. And the ALJ

determined that the medical evidence, viewed in its entirety, shows that Ms. Luepnitz's pain was controlled with medication. (Doc. 5-3, p. 19). The ALJ noted that Ms. Luepnitz had worked for seven years while on this pain regimen. (Doc. 5-3, pp. 31, 48). Ms. Luepnitz reported that she did not experience extreme side effects from her treatment drug, methadone. (Doc. 5-3, pp. 31, 48).

The ALJ did not find objective medical evidence indicating that Ms. Luepnitz experienced continued problems with swelling of her knee or that she needed frequent rest breaks or naps during the day. (Doc. 5-3, pp. 17, 19). On February 7, 2011, only a few days before Ms. Luepnitz completed her February 2011 pain assessment report, a post-operative report from Andrews Sports and Medicine stated that Ms. Luepnitz was "healing well" with only a little bit of swelling. (Doc. 5-8, p. 68; Doc. 5-9, p. 27). The post-operative report indicated that Ms. Luepnitz experienced "some pain," but she reported that she did not need any medications. (Doc. 5-9, p. 27). The Court has reviewed all of Ms. Luepnitz's medical reports in the record and finds that the ALJ had good cause to assign Dr. Mangieri's opinion little weight.

### B.  Consideration of Ms. Luepnitz's Combined Impairments

At step three of the sequential evaluation process, the ALJ must consider the combined effects of all impairments when evaluating disability. *Jones v. Dep't. of Health and Human Serv's*, 941 F.2d 1529, 1533 (11th Cir. 1991); *Walker v.*

*Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987).  To properly assess the combination of impairments at step three of the evaluation process, the ALJ must (1) note the evidence on which the conclusion was based; and (2) specifically state that all impairments were considered.  *See Gordon v. Astrue*, 249 Fed. Appx. 810, 812 (11th Cir. 2007); *Sneed v. Barnhart*, 214 Fed. Appx. 883, 886 (11th Cir. 2006); *Jones*, 941 F.2d at 1529.  The ALJ properly considered the combination of Ms. Luepnitz's impairments.

Ms. Luepnitz argues that the ALJ failed to make "'well-articulated findings as to the effect of the combination of impairments[,]'" as required by *Walker*. (Doc. 8, p. 12); *Walker*, 826 F.2d at 1001 (quoting *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984)).  In *Walker*, the Eleventh Circuit held that the ALJ's failure to consider a claimant's physical impairments and pain complaints in combination required a remand.  826 F.2d at 1001 (explaining that the ALJ erred by referencing only the claimant's left ankle and obesity and ignoring her arthralgia in the right knee, phlebitis in the right arm, hypertension, gastrointestinal problems, and asthma).

The ALJ followed the *Walker* standard.  The ALJ referenced all of Ms. Luepnitz's impairments of degenerative joint disease, disc herniation, degenerative disc disease, depression, and fibromyalgia.  (Doc. 5-3, pp. 16–18; Doc. 8, p. 12). Following an analysis of Ms. Luepnitz's end-stage arthritis, degenerative disc

disease of the lumbar spine and lumbar spondylolisthesis, fibromyalgia, and weight gain following her knee surgery, the ALJ opined:

> Given the fact that [Ms. Luepnitz] has experienced degenerative joint disease of her left knee requiring a total knee replacement and that she has a spinal condition which also imposed some functional limitations, the undersigned finds the claimant's obesity would adversely impact . . . these conditions, as well as her fibromyalgia.

(Doc. 5-3, p. 18). The ALJ also acknowledged Ms. Luepnitz's depression but found that it was not debilitating. (Doc. 5-3, p. 19). Ms. Luepnitz's medical records support this conclusion. (Doc. 5-3, p. 19). The ALJ properly discounted Dr. Blotcky's findings regarding Ms. Luepnitz's depression because Dr. Blotcky saw Ms. Luepnitz only once. *See Crawford*, 363 F.3d at 1160 (affirming the ALJ's decision to discount a consultative psychologist's opinion and noting the psychologist examined the claimant once).

Substantial evidence supports the ALJ's conclusion that Ms. Luepnitz "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." (Doc. 5-3, p. 15); *Hutchinson v. Astrue*, 408 Fed. Appx. 324, 327 (11th Cir. 2011); *see also Jones*, 941 F.2d at 1533 (finding that the ALJ properly considered the combination of impairments by stating "[the claimant] does not have an impairment or *combination of impairments* listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4") (emphasis in original).

Ms. Luepnitz also contends that the finding that she has "experienced good pain control" is not supported by substantial evidence.  (Doc. 8, p. 12).  Ms. Luepnitz cites *Elam v. Railroad Retirement Fund*, an Eleventh Circuit case that clarified the pain standard.  (Doc. 8, p. 12); *Elam*, 921 F.2d 1210, 1214 (11th Cir. 1991).  The court in *Elam* required that a claimant provide objective medical evidence of a condition that could reasonably cause the alleged pain; however, the court did not require a claimant to provide objective proof of the pain itself.

In 2002, the Eleventh Circuit elaborated on the *Elam* standard in *Wilson v. Barnhart*.  284 F.3d 1219, 1226 (11th Cir. 2002).  In *Wilson*, the Eleventh Circuit reversed a district court's decision to remand a case back to the ALJ.  *Id.* at 1219. The court reiterated that to establish disability based on testimony of pain, a claimant must satisfy two parts of the three-part pain test.  *Id.*  The claimant must provide: (1) evidence of an underlying medical condition, and (2) either objective medical evidence confirming the severity of the alleged pain or objective medical evidence that can reasonably be expected to give rise to the alleged pain.  *Id.*  In *Wilson*, the court also required that an ALJ "adequately articulate reasons for discrediting a claimant's subjective testimony."  284 F.3d at 1219.

The Court finds that the ALJ properly applied the two-part test.  First, the ALJ determined that Ms. Luepnitz satisfied the first prong; the ALJ found that Ms. Luenpitz has (1) degenerative joint disease of the left knee status, (2) degenerative

disc disease of the lumbar spine, (3) lumbar spondylolisthesis, and (4) fibromyalgia.  (Doc. 5-3, p. 12).

Second, the ALJ determined that objective medical evidence neither confirms the severity of the pain alleged, nor is it reasonably likely to give rise to the alleged pain.  (Doc. 5-3, p. 16).  The ALJ properly conducted a credibility determination, finding Ms. Luepnitz's subjective reports to be inconsistent with the objective medical evidence.[8]  (Doc. 5-3, p. 17).  The ALJ cited follow-up medical evaluations reporting that Ms. Luepnitz was recovering well from her knee-surgery; the ALJ referred to treatment notes from West Alabama Neurosurgery in which Ms. Luepnitz stated that she felt "pretty good" after her epidural block; and the ALJ noted that none of Ms. Luepnitz's attending physicians have indicated that she has significant functional limitations due to her fibromyalgia.  (Doc. 5-3, p. 17).  Similar to the ALJ in *Wilson*, the ALJ in this case has also cited C.F.R. § 404.1529, "which contains . . . language regarding the subjective pain testimony that this court interpreted when initially establishing [the] three-part pain standard."  *Wilson*, 284 F.3d at 1226.  This Court finds that the ALJ properly evaluated the combination of impairments, correctly applied the two-part pain test, and supported her conclusions with specific references to the record.

---

[8] In *Gibson v. Heckler*, a case cited by Ms. Luepnitz, the Eleventh circuit held that the ALJ "must necessarily review the medical evidence and make a credibility determination in assessing . . . disability on the basis of pain."  *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986); (Doc. 8, p. 13).

## IV.   CONCLUSION

The ALJ's decision is based upon substantial evidence, and it is consistent with the applicable legal standards.   Accordingly, the decision of the Commissioner is AFFIRMED.

**DONE** and **ORDERED** this March 26, 2015.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE